Good morning, ladies and gentlemen. Our first case for argument this morning is Lay v. Saul. Mr. Horne. May it please the court, counsel. This case is about a pain disorder, principally. The West Regional Pain Syndrome. And if you don't mind, I'll just refer to it as the pain disorder because repeating that is going to cut into my time significantly. The pain disorder was diagnosed by a pain doctor. And the pain doctor's disabling opinion was that Klayman could only be on his feet less than one hour of eight, sit less than two hours of eight, only occasionally reach, handle, finger, or feel, and could not work a full day. That precludes work. The pain doctor had performed 18 procedures by the time he issued that opinion in July 2014. Overwhelming objective evidence supported his opinion. From September of 2009 until March of 2017, Klayman had 34 procedures. Many of them could have resulted in paralysis or even death. But that wasn't enough for the administrative law judge in this case. The pain disorder resulted from a thoracic fracture in 2001. That's what caused the pain disorder. And we submit that the administrative law judge's reduction of Klayman's residual functional capacity to sedentary was inadequate to reflect the limitations caused by the pain disorder. Because it's a pain disorder that resides in his nerves. It really doesn't necessarily have anything to do with exertion. And he testified at this hearing that he could only concentrate 75% of the time, which the vocational expert... That beats the record of most people, but go ahead. Yes. He could only concentrate 75% of the time, which precludes work, according to the vocational expert. Now, the administrative law judge chose to discredit him and reject the pain doctor's opinion in favor of the opinion of a non-treating, non-examining nephrologist. That's a kidney doctor. For one reason, because Klayman hadn't gotten a spinal stimulator fast enough. But the ALJ seems not to have noticed that he... Counsel, our time is short, and you've so far not even mentioned the governing standard of review. The question for us is whether there is substantial evidence for the ALJ's decision. Not whether it's something we independently agree with. You might want to address that. Happily, the standard would be that it's patently wrong, and it most certainly is patently wrong. No, the standard is whether there is substantial evidence. But there's not. There's not substantial evidence. You need to address the standard rather than just repeating the argument that neither the ALJ nor the district judge fought. The ALJ was required to give good reasons for the rejection of the Klayman's credibility in account of his subjective symptoms, and the ALJ was required to give good reasons for the rejection of the opinion of the treating pain doctor. That's why the standard is met in this case. The administrative law judge failed to get a medical opinion to support her assessment of the limitations caused by the evidence submitted since the last state agency review which showed aggravation of Klayman's shoulder problems and aggravation of his migraines. The migraines were never even properly considered by the reviewers. So the line of cases that begins with Goins and goes through stage says there has to have been a medical opinion to support the administrative law judge's opinion of what limitations were caused by the worsening of the migraines and the shoulder problems. And, of course, this is against a background where this Klayman was a type 1 diabetic who had type 1 diabetes since the age of 8 and he had an insulin pump since the age of 30. That is why the standard is met. Is there any other question I can respond to? No, it seems not. Thank you. Ms. Siegel. Good morning, Your Honor. My name is Catherine Siegel. I represent the Commissioner of Social Security in this case. The standard of review is substantial evidence. You're reviewing whether substantial evidence supported the ALJ's decision. You are not to reweigh the evidence. The court has a deferential standard of review. You're not substituting the judgment that you reached after you reviewed the evidence on your own and make a different decision from the ALJ. You are deciding whether the ALJ has substantial evidence to support her decision. And here, as you pointed out, Mr. Lay invites the court to reweigh the evidence rather than pointing out what was missing from the ALJ's decision. Also, the burden of producing evidence of the Klayman's disability is on the Klayman through Step 4. The Klayman has a responsibility to produce evidence under both the Act and the regulations. And when he's represented by an attorney like Mr. Horn, who's helping him present his case to the agency, he's presumed to have presented his best case for disability. I just want to briefly cover some of the things that Mr. Horn has raised regarding some of the things that he claims were missing. With regard to concentration deficits, the ALJ did a very comprehensive analysis of the Klayman's allegations with regard to concentration. She asked questions of the Klayman about this, and the Klayman said that he was off-task about 25% of the time, on-task about 75% of the time. And the ALJ weighed that testimony against other things in the record that showed that he did have some ability to concentrate. In particular, she pointed to the ability to drive his children to and from school, which she felt was a significant concentration requirement. If you were off-task driving your children to school, you know, even for a minute, if you were taking a short drive, you could have an accident. So, clearly, his ability to concentrate doesn't appear to be as limited as the Klayman is alleging. The other things that she also considered in deciding whether that allegation was worth giving great weight was the Klayman's ability to help his children with their homework, and also just the evidence about the mental status examinations that he got from the doctors. The doctors, time and time again, looked at his concentration and said it was normal. And then also the Klayman in an agency report said that he was able to pay attention without any problems and was able to follow instructions and didn't have any problem with handling changes in work routine. The Klayman is saying also that the main problem that he has is a pain syndrome that's caused by a back fracture. And the back fracture was at T12, the thoracic spine, so that's about midway through the chest, and the allegations of pain are occurring in his feet and lower back. And the treatment that the Klayman received for this back impairment occurred before the time that he's claiming he was disabled. The actual injury occurred in 2001, and then he had a procedure in February of 2010, about eight months before his alleged onset of disability, where he had a vertebroplasty, which is a kind of injection of bone cement that stabilizes the back. That was the basis that the treating physician, Dr. Anwar, gave for limiting the Klayman's ability to sit and stand to a very significant degree. The lifting restrictions were actually greater than what the ALJ assessed. And the ALJ, when assessing the reasons for rejecting Dr. Anwar's opinion about the limitations, the standing and walking in particular, she looked over what the reasons were that the doctor gave for assessing these limits. And the only thing that this doctor put was compression fracture, which presumably referred to that one compression fracture from 2001. She did not refer to a pain syndrome. She did not refer to complex regional pain syndrome or RSD or any of those conditions that the Klayman is now claiming is the basis for his disabling pain. She said the limits were based on a compression fracture. That wasn't much of an explanation, and that was one of the reasons that the ALJ gave for saying, I'm not going to give all those limits great weight. I'm going to give it little weight. She also looked at some of the inconsistencies within that report on the face of the report. One of the things that Dr. Anwar said about lifting was that the Klayman could frequently lift 11 to 20 pounds and only occasionally lift 1 to 10 pounds. And that on its face was inconsistent. It doesn't seem right that someone should be able to frequently lift more than the lower amount. So those were two of the reasons that the ALJ gave. And also I'd like to point out that Dr. Anwar's opinion was considered by Dr. Belinsky before giving the restrictions. Dr. Belinsky is the state agency reviewing physician. Dr. Anwar's report and Dr. Anwar's medical findings were considered by that doctor, reviewed by that doctor, and then the doctor came to a sedentary work capacity. The sedentary work capacity that Dr. Belinsky gave lines up pretty well with the ALJ's restrictions. It provides substantial evidence for the ALJ's residual functional capacity finding. And because Dr. Anwar did not provide much of an explanation, even though there was space on the form, this court could reasonably expect the ALJ to consider that and to give that as a reason, which she did. She gave that as a reason for not accepting the limitations on that checkbox form. The ALJ did actually consider a lot of different factors in assessing the claimant's pain and what impact it had on functioning. In addition to the medical records and the physician opinions regarding the claimant's symptoms, she also considered the claimant's activities. And one of the more interesting activities that the claimant engaged in was racing radio-controlled cars. He owned and operated a business in which he ran a racetrack for these radio-controlled cars, and he did this during the time that he said that he was disabled. That's 2012, 2013, and 2014, right in the middle of the period that he's claiming he's disabled. And the ALJ asked a lot of questions about that, and the claimant explained that he did this activity on Friday evenings from 7 to 11 every week during this three-year period, that he actually opened the racetrack for the players, and that he collected money, and that he also participated in the racing with these little radio-controlled boxes that they operate the racetrack with. And the reasons for closing it were that the owner of the warehouse where this racetrack was located and that he was renting, they decided to sell the warehouse, and the new owner didn't want to have the racetrack in there anymore. And also, he wasn't making much money at doing this, and then he said it was no longer fun. So at least two of the reasons are not related to a disability basis. And even the last one, not having as much fun doing it, presumably because he's in pain, that's only one out of the three that was the reason for closing it, and it was pretty substantial activity. One of the things that the ALJ said about why she considered it, she didn't equate it to work. It really isn't necessary to repeat what the ALJ said. You can assume we've read it. Okay. I just wanted to point out that the claimant hasn't identified any evidence that occurred after Dr. Belinsky's opinion that would cause the ALJ to change her mind about the restrictions, and the claimant did not point out any specific medical findings that would indicate a specific limitation that was left out of the ALJ's decision. The limits on the environmental limits for- Thank you, Counsel. Anything further, Mr. Horne? The doctor said elsewhere in the record that the fracture of the thoracic spine caused the RSTS, and the real standard that the court has to consider here is the harmless error standard. Counsel, the standard is substantial evidence. Well, the judge broke the rules. That's the statutory rule, which we try to follow. But substantial evidence, as I pointed out, doesn't support the decision. One of the reasons the ALJ relied upon to discredit the claimant was the failure to move fast enough with the stimulator, but as I counted, the stimulator was inserted four times and removed three times because of insurers. The standard for harmless error is that a reasonable prior effect would have to be unable to find any other decision than the one that the ALJ found, and that's simply not the case. Thank you. Thank you, Counsel. The case is taken under advisement.